**IT IS ORDERED as set forth below:**

**Date: July 1, 2022**

_____
**James R. Sacca
U.S. Bankruptcy Court Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| **KEYS MEDICAL STAFFING, LLC,** | Case No. 22-20573 |
| Debtor. | |

**INTERIM ORDER AUTHORIZING DEBTOR TO USE
CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION**

This matter came before the Court on June 30, 2022 for hearing (the "**Preliminary Hearing**") on the Motion of Keys Medical Staffing, LLC (the "**Debtor**") for Authority to Use Cash Collateral (the "**Motion**").[1] Present at the hearing were Will Geer and Elizabeth Childers on

---

[1] All capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

behalf of the Debtor, David Weidenbaum on behalf of the United States Trustee, Leon Jones, Subchapter V. Trustee, Rob Williamson on behalf of ARA, Inc. d/b/a Lone Oak Payroll ("**Lender**"), and Darryl Laddin on behalf of SavaSeniorCare Administrative Services, LLC ("**Sava**"). Prior to the Preliminary Hearing, the Lender filed a Notice of Filing Exhibits in Connection with Hearing on Debtor's Emergency Motion for Authority to Use Cash Collateral [Doc. No. 15], certain exhibits for use at the Preliminary Hearing, which included certain exhibits attached thereto, including, without limitation a Conditional Letter of Agreement for Factoring and Payroll services, dated June 2, 2020, and an Amendment thereto dated May 19, 2021 (collectively, the "**Factoring Agreement**"). At the Preliminary Hearing, the Lender objected to any use of cash collateral and asserted that the terms of the Debtor's proposed use of cash collateral failed to provide Lender with adequate protection for the Debtor's use thereof. After hearing testimony from a representative of the Debtor and the arguments of counsel, the Court overruled the objection, for purposes of this Interim Order, and approved the Budget, as modified and defined below. Upon consideration of the Motion, representations of counsel and evidence presented at the Preliminary Hearing, and all other matters of record, the Court hereby finds:

A. The Debtor filed its petition for relief under chapter 11 of the Bankruptcy Code on June 28, 2022 (the "**Petition Date**"). Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtor remains in possession of its assets and has continued the operation and management of its business in this chapter 11 case.

B. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2), involving matters under 11 U.S.C. §§ 361 and 363. Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

C. The Debtor asserts that the Factoring Agreement is a loan rather than a true sale of receivables. The Lender asserts that it is the owner of certain accounts receivable which it purchased from the Debtor under the Factoring Agreement, and the Lender asserts further that it holds a security interest in all of the Debtor's personal property (the "**Pre-Petition Collateral**") as security for all amounts owed to the Lender by the Debtor. The Lender contends that, as of June 29, 2022, the Debtor was indebted to it under the Factoring Agreement in the total amount of it is owed approximately $1,279,553.85, exclusive of attorneys fees and other items recoverable under the Factoring Agreement and applicable law. Debtor disputes the amount owed.

D. The revenue from the Debtor's business may constitute Cash Collateral as that term is defined in 11 U.S.C. § 363 (the "**Cash Collateral**"). The Debtor believes that the Lender may assert an interest in the Cash Collateral. The Debtor is not aware of any other creditor asserting an interest in the Cash Collateral.

E. The Debtor asserts that it generates substantially all of its revenue from the operation of its business.

F. The Debtor asserts that it has provided actual notice of the Motion and the relief requested therein to the Lender, to each of the Debtor's Twenty Largest Unsecured Creditors, and the United States Trustee.

G. The Debtor alleges that an immediate need exists for the Debtor to obtain use of the Cash Collateral to fund critical operations. A schedule of the Debtor's revenues and cash requirements for the two weeks following the Petition Date is set forth in the budget (the "**Budget**") attached to this Interim Order as **Exhibit A**.

H. The Debtor alleges that to preserve the value of its assets, it requires the use of the Cash Collateral in accordance with this Interim Order.

I. Good cause has been shown for the entry of this Interim Order and authorization for the Debtor to use cash collateral on an interim basis pending the final hearing on the Motion pursuant to Bankruptcy Rule 4001(b) (the "**Final Hearing**"). Among other things, entry of this Interim Order will minimize disruption, will increase the possibility for a successful reorganization, and is in the best interests of the Debtor, its creditors, and other parties-in-interest.

Accordingly, it is hereby

**ORDERED, ADJUDGED AND DECREED:**

1. The Motion is GRANTED on an interim basis. Subject to the terms hereof, this Interim Order is effective immediately.

2. The Debtor is authorized to use Cash Collateral as set forth herein from the date of the entry of this Interim Order through and including the date of the final hearing on the Motion (or any further interim hearing) (the "**Interim Period**"), pursuant to the Budget. The Interim Period may be extended by further order of the Court following notice to the Lender and other parties in interest.

3. All clients of the Debtor, including Sava, are authorized to send funds they are holding for services already provided directly to the Debtor.

4. Any amount of funds for outstanding receivables collected over and above those allowed to be spent in the Budget during the Interim Period ("**Excess Funds**") shall be promptly remitted by the Debtor to, and held in trust by, Debtor's counsel. Counsel for the Debtor shall not disburse any of Excess Funds to any person or party

~ 4 ~

except upon further Order of this Court following notice and opportunity to be heard to the Debtor, the Lender and other parties in interest.

5. Sava, its affiliates, or any other client who sends funds to the Debtor (each, an "Account Debtor") in accordance with this Interim Order, shall not be liable to either the Debtor or the Lender to the extent of the amount of funds that are actually paid to the Debtor, and any such payments by an Account Debtor shall be credited against, and in satisfaction of, invoices that are undisputed by such Account Debtor.

6. As adequate protection for any diminution in the value of the Lender's interests in the Pre-Petition Collateral resulting from the use of Cash Collateral, the Lender is hereby granted (in the same priority as existed in the Pre-Petition Collateral, and only to the extent that the prepetition liens and interests of the Lender is valid, binding, enforceable and non-avoidable), pursuant to Sections 361, 362 and 363 of the Bankruptcy Code, valid, binding, enforceable and automatically perfected liens on and security interests in (collectively, the "**Adequate Protection Liens**") (i) all personal property of the Debtor that is of a kind or nature described as Collateral in the Factoring Agreement, whether existing or arising prior to, on or after the Petition Date, and (ii) all other personal property of the Debtor, wherever located and whether created, acquired or arising prior to, on or after the Petition Date (all such personal property, together with all cash and non-cash proceeds thereof, being hereinafter referred to as the "**Replacement Collateral**"; and together with the Pre-Petition Collateral, the "**Collateral**").  Notwithstanding the foregoing, the Replacement Collateral shall not include any claims or causes of action of the Debtor under 11 U.S.C. §§ 544, 547, 548 or 550 ("**Avoidance Actions**") or any proceeds of any of such claims or causes of

action ("**Avoidance Proceeds**").  The Adequate Protection Liens shall at all times be senior to the rights of the Debtor and any successor trustee or estate representative of the Debtor's estate, and any security interest or lien upon the Debtor's assets that is avoided or otherwise preserved for the benefit of the Debtor's estate under Section 551 or any other provision of the Bankruptcy Code shall be subordinate to the Adequate Protection Liens.  The Adequate Protection Liens and all claims, rights, interests, administrative claims and other protections granted to or for the benefit of the Lender pursuant to this Order and the Bankruptcy Code shall constitute valid, enforceable, non-avoidable and duly perfected security interests and liens.  The Lender shall not be required to file or record financing statements, mortgages, deeds to secure debt or similar instruments which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession or control, to validate and perfect such security interests and liens.

7.  The Debtor shall provide to the Lender: (i) copies of weekly transaction registers on all bank accounts in the name of the Debtor upon the request of the Lender in writing to Debtor's counsel.

8.  Until expended by the Debtor, all Cash Collateral shall remain subject to the alleged liens and claims of the Lender under the Factoring Agreement and this Interim Order.  Likewise, all Excess Funds shall remain  subject to the alleged liens and claims of the Lender under the Factoring Agreement and this Interim Order.

9.   Nothing herein shall be construed as a finding or conclusion that  (a) the Lender or any other party holds a valid security interest, lien, or any interest in any of

the Debtor's assets, or (b) that the protections afforded to the Lender under this Interim Order are adequate, and all parties' rights with respect to such issues are reserved.

10. This Interim Order is entered without prejudice to the rights of either the Lender or the Debtor to seek a modification of the terms hereof after notice and a hearing, and without prejudice to the right of Debtor to object to any claim.

11. The Court shall hold a final hearing on the Motion on **July 13, 2022 at 9:00 A.M. in Courtroom 103, United States Courthouse, 121 Spring Street, SE, Gainesville, Georgia 30501**.

Parties may participate via Zoom at the following link: https://www.zoomgov.com/j/1614180533?pwd=Q01BN09BcThReFBtbU5LanZKb3JtQT09. This link is best used on a desktop or laptop computer but may be used on a phone or tablet and can also be found on Judge Sacca's webpage https://www.ganb.uscourts.gov/content/honorable-james-r-sacca. Participants' devices must have a camera and audio.

12. The instant Interim Order shall remain valid until such hearing, or any continuation thereof, has been held and a ruling entered.

13. Debtor's counsel shall serve a copy of this order on all parties-in-interest within three (3) days of entry and promptly file a certificate of service thereafter evidencing the manner and method of service.

### ### END OF ORDER ###

**Prepared and presented by:**

**ROUNTREE LEITMAN KLEIN & GEER, LLC**

*/s/ Elizabeth A. Childers*
William A. Rountree, Ga. Bar No. 616503
Will B. Geer, Ga. Bar No. 940943
Elizabeth A. Childers, Ga. Bar No. 143546
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329
(404) 584-1238 Telephone
wrountree@rlkglaw.com
wgeer@rlkglaw.com
echilders@rlkglaw.com
*Proposed Attorneys for the Debtor*

**Review and approved as to form**

/s/ Leon S. Jones (w/ express permission)
Leon S. Jones
Georgia Bar No. 003980
SubChapter V Trustee
Jones & Walden, LLC
699 Piedmont Avenue, NE
Atlanta, GA 30308
(404) 564-9300 Phone
(404) 564-9301 Facsimile
ljones@joneswalden.com

~ 8 ~

**Distribution List**

William A. Rountree
ROUNTREE LEITMAN KLEIN & GEER, LLC
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, Georgia 30329

Office of the United States Trustee
Attn: David Weidenbaum
Suite 362, Richard B. Russell Building
75 Ted Turner Drive, SW
Atlanta, Georgia 30303

# EXHIBIT A

# BUDGET

|  | Week 1 | Week 2 |
|---|---|---|
| **Beginning Cash:** | $ 617.00 | $ 11,201.58 |
| **Total Inflows:** | $ 31,708.65 | $ - |
| **Sava check:** |  | $ 50,000.00 |
| **Expenses** |  |  |
| Auto Expense | $ 563.52 | $ 563.52 |
| Computer and Internet | $ 72.04 | $ 72.04 |
| Contractors Expenses |  |  |
| Contractors | 12,683.46 | 15,220.15 |
| **Total Contractors Expenses** | **$ 12,683.46** | **$ 15,220.15** |
| Officer Compensation | $ 4,867.13 | $ 4,867.13 |
| Dues & Subscriptions | $ 33.53 | $ 33.53 |
| Insurance | $ 544.27 | $ 544.27 |
| Office Expenses | $ 76.48 | $ 76.48 |
| Parking Fees and Tolls | $ 9.50 | $ 9.50 |
| Recruitment Expense | $ 579.72 | $ 695.67 |
| Software Expenses | $ 1,107.61 | $ 1,107.61 |
| Supplies | $ 138.91 | $ 138.91 |
| Telephone | $ 140.98 | $ 140.98 |
| Travel | $ 172.66 | $ 172.66 |
| Utilities | $ 134.28 | $ 134.28 |
| **Total OutFlows:** | **$ 21,124.07** | **$ 23,776.71** |
| **Ending Cash:** | **$ 11,201.58** | **$ 37,424.87** |